IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 23 CR 113 |
| v. | ) |
| | ) Chief Judge Virginia M. Kendall |
| JONAS CASTILLO. | ) |
| | ) |

**OPINION AND ORDER**

Pending before the Court is Defendant Jonas Castillo's Motion to Suppress. (Dkt. 454). The Court held an evidentiary hearing on the issue on March 17, 2025. (Dkt. 559). For the following reasons, the Court denies Castillo's Motion [454].

**BACKGROUND**

The Superseding Indictment charges Castillo with possessing a firearm in furtherance of a drug trafficking crime and possession of a firearm by a felon. (Dkt. 261). These charges relate to Castillo's June 21, 2022 arrest. (Dkt. 581 at 3). After Castillo's arrest, two witnesses (Witness A and Witness B) identified Castillo at a show-up. (*Id.* at 1). Now, Castillo seeks to exclude that identification and any subsequent identification testimony by Witnesses A and B claiming that the show-up was unduly suggestive and unreliable and, therefore, violated Castillo's due process rights. (Dkt. 545 at 1).

I. **Incident, 911 Call, and Arrest**

The relevant events of the evening of June 22, 2022, are as follows: At 9:03pm and again at 9:11pm Witness A called 911 to report that a person matching Castillo's description had threatened Witness A and Witness B with a gun while driving a vehicle. (Dkt. 581 at 3). Witness A observed that the driver was a Hispanic man with long hair, glasses, and a white shirt. (Dkt. 489

1

at 2). The Original Case Incident Report stated the caller was "not able to see his picture/not clear." (Dkt. 545 at 2). Witness A provided the license plate of the vehicle the person was driving. (*Id.*) Chicago Police Department officers located the vehicle at a nearby McDonald's approximately 13 minutes after Witness A first called 911, with Castillo in the driver's seat. (*Id.*) The driver of the vehicle, subsequently identified as Castillo, appeared to be a Hispanic man with long hair, glasses, and a white t-shirt; this matched the description Witness A had provided on the 9:03pm 911 call of the man who had threatened them. (Dkt. 489 at 4).

After refusing to comply with police officers who directed Castillo to exit the vehicle, Castillo attempted to flee on foot, but police arrested him. (Dkt. 489 at 4–5). Thereafter, Police searched the vehicle Castillo was driving. (*Id.*) Inside the vehicle, police found a firearm. (*Id.*) About 45 minutes after the initial 911 call, police brought Witnesses A and B to the McDonald's and conducted a "show-up.[1]" Witnesses A and B positively identified Castillo at the show-up. (*Id.*)

From the time that police arrived at the McDonald's, all the relevant police activity, including the arrest and show-up, was captured on body-worn camera ("BWC") from several officers, except for a period of approximately twelve minutes between 9:31 p.m. and 9:43 p.m. (Dkt. 581 at 3). During this period, two police officers—Officer Berggren and Officer Larys—left the McDonald's, picked up Witnesses A and B, and brought them back to the McDonald's for the show-up. (*Id.* at 3–4). En route to the show-up, Officer Berggren stated, "We're gonna bring him out of the car, all you gotta do is just say yes or no." (Dkt. 489 at 6).

## II. Police Conduct at the Show-up

After arriving at the McDonald's, another officer, Officer Acevedo opened the door to the backseat of the car and stated, "We're gonna show you the guy, alright? Take a look at him. Both

---

[1] Conducting a "show-up" means that police presented Castillo in custody to Witnesses A and B and asked Witnesses A and B whether he was the person who threatened them. (Dkt. 581 at 3).

2

of you saw him? OK so both of you look at him . . . . Step out. Stay right here both of you. Make sure you can see him clearly." (*Id.*) Two officers brought Castillo out of the rear seat of a marked Chicago police car. (*Id.*) Castillo was handcuffed, and the police car's emergency lights were activated. (*Id.*) Emergency lights on several police cars in the area were also activated. (*Id.*) Officer Larys, who was in the front passenger seat of the car with Witnesses A and B, stepped out of the car at the time of the show-up, and her BWC captured the show-up from nearly the same perspective as Witnesses A and B, as depicted below:



3

(Dkt. 489 at 7). At this time, Witness A stated, "Yeah that's the guy." Witness B stated, "He had sunglasses, but he changed. Regular glasses." (*Id.*)

## DISCUSSION

To succeed on a motion to suppress identification testimony, courts employ a two-pronged analysis. *United States v. Hawkins*, 499 F.3d 703, 710 (7th Cir. 2007). First, courts assess whether a defendant has shown that the police employed an unreasonably suggestive identification procedure. *United States v. Funches*, 84 F.3d 249, 253 (7th Cir. 1996). Second, "[i]f the defendant succeeds, the court must determine 'whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedures.'" *Id.* (quoting *Kubat v. Thieret*, 867 F.2d 351, 357 (7th Cir. 1989). "[T]he primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (internal citation omitted).

The Court agrees with Castillo that the show-up was unreasonably suggestive. The out-of-court identifications are, however, still reliable and therefore, do not violate Castillo's due process rights. Accordingly, the Court will allow the witnesses' identification of Castillo.

### I. The Show-up

A show-up procedure is when only one suspect is presented to a witness. *Funches*, 84 F.3d at 254. The procedure has "been widely condemned because of [its] potential to render unreliable, mistaken identifications." *Id.* Moreover, "[a] show-up is inherently suggestive because the witness is likely to be influenced by the fact that the police appear to believe the person brought in is guilty, since presumably the police would not bring in someone that they did not suspect had committed the crime." *Id.* There are, however, certain situations where show-ups are appropriate, "as they 'allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons.' " *United States v. Sleet*, 54 F.3d 303,

4

309 (7th Cir. 1995). Absent such exigent circumstances, a less suggestive identification process, like a line-up with multiple individuals, should be arranged. *See Funches*, 84 F.3d at 254; *Hawkins*, 499 F.3d at 707 (" . . . showup identification is not unduly suggestive in cases of extraordinary urgency.").

Here, the show-up was unduly suggestive. After arresting Castillo, police brought him out of the squad car in front of Witnesses A and B for them to identify him. At this time, not only was Castillo in handcuffs, but there were also multiple police cars in the area with their emergency lights flashing. (Dkt. 489 at 6). As depicted in the still image from the BWC, an officer shined his flashlight onto Castillo so that Witnesses A and B could identify him, while another officer looked on. (*Id.*) This could certainly influence the two witnesses to believe that Castillo was the person who had threatened them earlier. *Funches*, 84 F.3d at 254; *see also United States v. Strode*, 229 F.3d 1161 (9th Cir. 2000) (finding that it was unduly suggestive for officers to bring a suspect out in handcuffs with both witnesses present).

Furthermore, exigent circumstances did not necessitate the show-up. In *United States v. Dixo*n, this Court explained that when "there [is] no risk of losing any witness testimony," a show-up is unnecessary. 2023 U.S. Dist. LEXIS 200627 at *5–6, No. 22 CR 140 (N.D. Ill. November 8, 2023). Like in *Dixon* where conducting a physical or photograph lineup was feasible, here too, Sergeant Timothy Martin's testified, at the suppression hearing, that nothing was stopping officers from conducting a lineup in lieu of the show-up. (Dkt. 568 at 37). This suggests that like in *Dixon*, here, "the show-up was conducted out of simple convenience, not extraordinary urgency . . . . " *Id. Dixon*, 2023 U.S. Dist. LEXIS 200627 at *3.

At the suppression hearing, Sergeant Martin also testified that, without the witnesses' out-of-court identifications of Castillo, there was already substantial evidence against Castillo,

5

suggesting that the show-up was unwarranted. *See Funches*, 84 F.3d at 254 (explaining that there is a "strong argument" that a show-up was "impermissibly suggestive" because "there was no danger of losing a key witness"). Martin testified that: (1) when he ordered the show-up, he believed that the license plate of the Lexus that Mr. Castillo was driving was identified by a complaining witness as the license plate of the car from which a gun was displayed and (2) Castillo matched the description that Witness A had provided of the person who threatened them. (Dkt. 568 at 53–62, 186–188). This demonstrates that, like the defendant in *Dixon*, there was sufficient evidence against Castillo to make a show-up unnecessary. *Dixon*, 2023 U.S. Dist. LEXIS 200627 at *9. Accordingly, the show-up was unduly suggestive.

## II. Reliability

Despite the unduly suggestive show-up, the Court may still admit the witnesses' identification of Castillo if their testimony is reliable under the totality of the circumstances. [2] *Funches*, 84 F.3d at 253. The Supreme Court has identified five factors that bear on the reliability of identifications: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200.

The first factor weighs slightly against reliability. The record suggests that the witnesses had a limited opportunity to view Castillo. The incident, in which Castillo allegedly threatened the

---

[2] Witness A and Witness B are no longer in the United Staes. (Dkt. 489 at 2, n. 1). This discussion is based on the briefing for this Motion including the Original Case Incident Report, the Chicago Police Department officers' testimony, BWC footage, and the Chicago Police Arrest Report for Jonas Castillo. Witness A and Witness B were unavailable to testify. The police officers who spoke with the witnesses did not testify, at the suppression hearing, about the witnesses told them as it pertains to the *Biggers* factors. The Court may rely on Witness A's prior testimony because neither the Federal Rules of Evidence, see Fed. R. Evid. 104(a), nor the Confrontation Clause applies to at a suppression hearing. See *United States v. Bebris*, 4 F.4th 551, 558-59 (7th Cir. 2021) (citing Ebert v. Gaetz, 610 F. 3d 404, 414 (7th Cir. 2010)

witnesses, occurred on a busy street in Chicago (near the corner of Kedzie Ave. and Wilson Ave.), after sunset—sometime shortly after 9pm on June 21, 2022. (Dkt. 489 at 11–12). The encounter was brief; the circumstances were dynamic and charged, as Castillo allegedly pointed a gun at them, while on a city street. (*Id.* at 2). Still, sometimes even under circumstances when a witness's opportunity to view a suspect is not ideal, courts have found this factor still weighs in favor of reliability. *U.S. ex rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 558 (N.D. Ill. 1989) (finding a witness's opportunity to view a suspected murderer was reliable, despite the short duration and witness being under a pool table during the interaction). Here, because it was nighttime, the interaction was short, and the incident occurred on a busy street while the witnesses were in a car, this factor weighs slightly against the identification's reliability.

It is ambiguous whether the second factor, the witnesses' degree of attention, favors reliability. On one hand, Castillo argues that because Witness A was driving when the person threatened them, Witness A would likely have been preoccupied with watching the road and other vehicles. Witness B may likewise have been distracted by watching for other cars. This could lower the witnesses' degree of attention. On the other hand, as the Court has previously pointed out, "the dramatic nature of a crime could just as easily focus a witness's attention." *Dixon*, 2023 WL 7386047, at *3 (citing *Walton v. Lane*, 852 F.2d 268, 273-74 (7th Cir. 1988)). Castillo's alleged threat pointing a gun at the witnesses could have made them pay closer attention. Without additional testimony from the witnesses, the Court cannot say whether this factor weighs in favor reliability.

The third factor, the accuracy of the witness's prior description of the criminal, weighs strongly in favor of reliability. Witness A provided an accurate and specific description of Castillo when he spoke to police; he described Castillo as a Hispanic male with long hair, wearing a white

7

t-shirt and glasses. (Dkt. 489 at 12). Like in other cases, which have found this factor weighed in favor of reliability, Witness A's description is similarly detailed. *Funches*, 84 F.3d at 255 (providing a close approximation of the robber's height and weight); *Sleet*, 54 F.3d at 310 (accurately describing the defendant's height and weight and the color of his shoes). Witness B also accurately noted that Castillo had been wearing sunglasses previously but was not at the time of the confrontation. (Dkt. 489 at 7). This sort of specific detail makes the testimony more reliable. *See Sleet*, 54 F.3d at 310 (finding factor three makes identification more reliable because witness identified what the suspect had been wearing at the beginning and end of a case). Defense argues that because the witness mistakenly reported that the person was driving a Mercedes when, in fact, it was a Lexus, that this undermines his testimony. (Dkt. 496 at 13). Mercedes and Lexus are both luxury brands and therefore, this does not significantly undermine Witness A's credibility, given the he identified Castillo's description with great accuracy. Factor three, therefore, strongly indicates the witnesses' identification of Castillo is reliable.

As for factor four, the level of certainty demonstrated at the confrontation, as the Government highlights, Witnesses A and B both identified Castillo without hesitation. (Dkt. 489 at 13). Witness B accurately noted that Castillo had been wearing glasses previously but was not at the time of the confrontation. (*Id.*) This would seem to make it more likely that the witnesses' identification is reliable. The show-up, however, was suggestive which undermines the witnesses' certainty at that time. Further, prior to the show-up, Officer Berggren stated that when they identified Castillo, the witnesses should either "say yes or no." (Dkt. 489 at 6). This also raises the specter that the witnesses felt pressure to respond quickly, giving a false sense of certainty. Because of these two considerations, this factor is a draw. *See Dixon*, 2023 WL 7386047 at *12.

8

(concluding that factor four was "a draw" because while the witnesses "were certain in their identification," "the show up procedure was unduly suggestive.").

The fifth factor, the time between the crime and the show-up, weighs heavily in favor of reliability. Between the alleged road-rage incident and the witnesses' identification, around 45 minutes elapsed. (Dkt. 489 at 13). As the Government points out, the Seventh Circuit has described a 90-minute delay as "very short" and has found identifications reliable after periods as long as one month. *See United States v. Clark*, 989 F.2d 1490, 1497 (7th Cir. 1993). Defense concedes that the short period "supports reliability." (Dkt. 454 at 13).

The totality of the circumstances shows that Witnesses A and B's out-of-court identification of Castillo is reliable. To start, even Defense concedes that the timing of the identification, factor five, supports reliability. (Dkt. 454 at 13). More importantly, Witness A provided a detailed and accurate description of what Castillo was wearing when police arrested him. Witness B also provided specific details about changes in Castillo's appearance. The only factor that weighs against reliability is the that the witnesses has a limited opportunity to view the criminal at the time of the crime. Because the witnesses provided detailed descriptions of Castillo, however, this reduces the weight of this factor in the Court's determining reliability. The witnesses provided detailed descriptions, which matched the Defendant's description. Accordingly, the totality of the circumstances suggest that the witnesses' identification of Castillo is reliable.

**CONCLUSION**

For these reasons, the Court denies Castillo's Motion to Suppress [454].

_____
Virginia M. Kendall
United States District Judge

Date: July 1, 2025